Alfred G. Rava, SBN 188318
RAVA LAW FIRM
3667 Voltaire Street
San Diego, CA 92106
Phone: 619-238-1993
Email: alrava@cox.net

Attorney for Plaintiffs Christine Johnson, Harry Crouch,
and the Putative Class

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| CHRISTINE JOHNSON and HARRY CROUCH, on behalf of themselves and all others similarly situated, | Case No. |
|---|---|
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR:** |
| v. | |
| FRESNO SPORTS AND EVENTS LLC LLC; FRESNO SPORTS AND EVENTS PARTNERS LLC; DBH FRESNO LLC; DIAMOND BASEBALL HOLDINGS LLC; DIAMOND BASEBALL PARENT LLC; MINOR LEAGUE BASEBALL INC.; JONATHAN BRAVO; UNIFIED BOARD OPERATIONS LLC DBA VIRTCH; and DOES 1 THROUGH 20, INCLUSIVE, | 1. **Violation of Civil Code § 51 - The Unruh Civil Rights Act;**<br>2. **Violation of Civil Code § 51.5;**<br>3. **Violation of Civil Code § 51.6 – The Gender Tax Repeal Act of 1995; and**<br>4. **Negligence** |
| Defendants. | |

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

All animals are equal, but some animals are more equal than others.

– George Orwell, *Animal Farm*

Plaintiffs Christine Johnson and Harry Crouch allege the following:

## NATURE AND BASIS OF CLAIMS

1. Nearly 40 years ago the California Supreme Court, in *Koire v. Metro Car Wash,* 40 Cal.3d 24 (1985), held unanimously that so-called "Ladies' Night" promotions violate the Unruh Civil Rights Act (codified as Civil Code Section 51). *Koire* held, "The scope of the statute clearly is not limited to exclusionary practices. The Legislature's choice of terms evidences concern not only with access to business establishments, but with equal treatment of patrons in all aspects of the business." *Koire* at 29. "Moreover, differential pricing based on sex may be generally detrimental to both men and women, because it reinforces harmful stereotypes." *Koire* at 34. "Public policy in California strongly supports eradication of discrimination based on sex. The Unruh Act expressly prohibits sex discrimination by business enterprises." *Id*. at 37.

2. *Koire* was approved by the California Supreme Court in another gender price discrimination case, *Angelucci v. Century Supper Club*, 41 Cal.4th 160 (2007), wherein the Court held – again, unanimously – that plaintiffs in Unruh Act cases are not required to first confront the discriminating business and affirmatively assert their right to equal treatment in order to have standing to sue. "As we have explained, the Act imposes a duty upon business establishments to refrain from arbitrary discrimination. If businesses are held not to violate the Act or inflict injury unless they are challenged by a patron, their ordinary practice may revert to discrimination, with special exceptions being made for individuals who happen to challenge the practice. Contrary to the purpose of the Act to eradicate discrimination, the Court of Appeal's interpretation leaves business establishments free to *advertise* and provide gender-based discounts and, presumably, to engage in other forms of discrimination that violate the Act, so long as these

2

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

establishments agree to provide equal treatment to those customers knowledgeable and assertive enough to demand it." *Angelucci* at 169. (Emphasis added.) The Plaintiffs' attorney in the case at bar represented the prevailing plaintiffs at the California Supreme Court in *Angelucci*.

3. Furthermore, in the putative class action of *White v. Square, Inc.,* 7 Cal. 5th 1019, 1032-1033 (2019) the California Supreme Court held, "We conclude that a person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under the Unruh Civil Rights Act, with no further requirement that the person enter into an agreement or transaction with the business." The court explained its reasoning by referring to *Angelucci*: "Our reasoning in *Angelucci* makes clear that in order to have standing, White did not need to contact Square to ask for an exception to the stated restriction or to verify that the restriction applied to him. (*Angelucci, supra*, 41 Cal.4th at p. 170.) Such a requirement would limit a business's liability only to individuals who inquire and would potentially enable a business to make exceptions to its stated policies in order to avoid suit, even as its stated policies *deter* the lion's share of customers belonging to a protected group." (Emphasis added.) Thus, *White* was undergirded by the California Supreme Court's concern that businesses will not only discriminate against customers belonging to a protected group in person, but also deter customers belonging to a protected group through the advertisement of discriminatory policies.

4. Read together, *Koire*, *Angelucci*, and *White* stand for the proposition that so-called "Ladies' Night" sex-based pricing promotions constitute a stated policy of unlawful gender price discrimination that is harmful to both men and women; standing is not limited to those persons who actually encounter the discrimination in person but is also conferred on persons who intended to use a business's services but were deterred from doing so because they encountered discriminatory advertisements; and plaintiffs in such cases are not required to request equal treatment or enter into an agreement or transaction with the business.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

5. In the present case, Defendants, including Fresno Sports and Events LLC LLC[1], Fresno Sports and Events Partners LLC, DBH Fresno LLC, Diamond Baseball Holdings LLC, and Diamond Baseball Parent LLC, doing business as a minor league baseball team called the Fresno Grizzlies ("Grizzlies"), along with Defendants Minor League Baseball Inc. ("MiLB"), Jonathan Bravo ("Bravo"), and Unified Board Operations LLC dba VirtCh ("VirtCh") created, approved, advertised, marketed, promoted, hosted, employed, managed, participated in, incited, and/or at least aided a "Ladies Night" game held on May 25, 2023 at the Grizzlies home Chuckchansi Park in Fresno that required male and nonbinary fans to pay more than female fans to attend that evening's game against the Stockton Ports (hereinafter referred to as the "Ladies Night game.")  Specifically, based on the fans' sex or gender, Defendants required male and nonbinary fans to pay up to at least $28.00 each to attend this Ladies Night game, while Defendants allowed all female fans to attend this Ladies Night game for free, with a $28.00 or more price differential or disparity based solely on the fans' sex.

6. According to the box score published by the Grizzlies after the Ladies' Night game, the attendance that evening was 2,749, and upon information and belief, most fans in attendance were males and nonbinary persons.

7. In addition, the Defendants doing business as the Grizzlies published discriminatory advertisements on the Grizzlies' websites and social media pages. The Grizzlies have over 71,000 followers on Facebook, 51,000 followers on X (formerly Twitter), and over 42,000 followers on Instagram, virtually all of whom, on information and belief, received posts or "tweets" on their social media accounts advertising the unlawful gender-based ticket pricing for the Ladies' Night game. As a result, on information and belief, thousands of Californians who intended to use Defendants' services were deterred from doing so because they encountered Defendants'

---

[1]This Defendant's official name on the California Secretary of State's website has "LLC" twice.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

discriminatory advertisements.

8. Defendant Minor League Baseball, Inc. ("MiLB") owns and operates the official website of the Grizzlies located at https://www.milb.com/fresno. On information and belief, at the direction of the Defendants doing business as the Grizzlies, MiLB published discriminatory advertisements on the Grizzlies' website and promotions calendar, examples of which are reproduced below (e.g. "Tomorrow, the Grizzlies are set to host Ladies Night, a delightful evening where all ladies will be granted free entry.")



5

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES





CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

9. In special interrogatory responses in the earlier state court action, Defendant Fresno Sports and Events, LLC identified Defendants Bravo and VirtCh employees Scot Johnson and Lindsey Webb as persons who planned, advertised, and implemented the Ladies' Night game.

10. VirtCh's CEO Bob Masewicz, and VirtCh employee Scot Johnson host a podcast called Pardon Our Promotion in which "they discuss what they've learned over their decades in Live Events, Sports Promotion, and Marketing. Each week, they'll dive into a new subject, sharing what works, what doesn't, and most importantly, why?" See https://www.listennotes.com/podcasts/pardon-our-promotion-virtch-productions-2HQFw94fxXh/# (last visited March 20, 2024.) In Episode 18, published on January 25, 2023, and titled "Marketing Promotions," Masewicz and Johnson interviewed Defendant Bravo, the Grizzlies' Director of Marketing and Communications. Thus, given the identities and roles of the persons involved, the topic of discussion, and the proximity in time between the podcast interview and the Ladies' Night game (four months), on information and belief Bravo and the Grizzlies on one hand, and VirtCh and Johnson and Webb on the other hand, colluded to plan, advertise, and implement the Ladies' Night game. As such, VirtCh is a proper defendant under an aiding or inciting theory of liability pursuant to Civil Code section 52 as explained further below.

11. On May 25, 2023, Defendants hosted the Ladies' Night game for which Plaintiffs and all other fans and attendees paid different prices for their tickets to the game based on the attendees' sex or gender, which violated California Civil Code sections 51 (codification of the Unruh Civil Rights Act), 51.5, and 51.6 (codification of Gender Tax Repeal Act of 1995).

12. In order to attend the Ladies' Night game, Defendants required male Plaintiff Harry Crouch to pay, and Mr. Crouch did pay, $18.00 at a ticket window for his Ladies Night game ticket to sit in Section 105, Row 2, Seat 1 in the Grizzlies' Chuckchansi Park stadium.

13. At the same time and place, Defendants provided female Plaintiff Christine

7

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Johnson with a free ticket to attend the Ladies' Night and her seat right next to Mr. Crouch – in Section 105, Row 2, Seat 2.

14. Both Plaintiffs presented themselves at the ticket window. Mr. Crouch paid $18.00 and in turn was provided his ticket, while the ticket clerk recognized and/or perceived Ms. Johnson as a female and provided her with a free ticket. Ms. Johnson was not required to ask for a free ticket in order to receive it.

15. Defendants' sex-based pricing for Plaintiffs and all other attendees to the Ladies' Night game was arbitrary, invidious, unlawful, and unreasonable, and intentionally denied all attendees equal accommodations, advantages, facilities, privileges, or services based solely on their sex or gender, which is prohibited by Civil Code sections 51, 51.5, 51.6, and 52.

16. Despite the many State of California anti-discrimination statutes, two unanimous California Supreme Court opinions, and the many rules and publications by the California Civil Rights Department that prohibit businesses operating in California from treating members of the general public unequally based on the their sex, Defendants had the temerity to create, approve, advertise, market, promote, host, employ, manage, participate in, incite, and/or at least aid the Ladies' Night game and its discriminatory pricing.

17. Aside from the two California Supreme Court cases cited above involving "Ladies' Night" gender price discrimination, there is a significant body of easily-obtained, publicly-available information putting business establishments on notice that such discriminatory conduct is illegal. For example, the California Civil Rights Department (formerly the Department of Fair Employment and Housing), the State agency charged with preventing unlawful discrimination against consumers by businesses operating in California, has published an Unruh Civil Rights Act "FAQ" on its website, which asks, "Can a business have a 'ladies night' promotion where only women get a discount or free service?  No. The Unruh Civil Rights Act prohibits offering        promotions        or        discounts        based        on        sex        or        gender."

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

https://calcivilrights.ca.gov/unruh/#faq (last visited March 19, 2024.)

18. The Judicial Council of California's jury instructions for violations of Civil Code sections 51, 51.5, and 51.6 (all alleged here), i.e., CACI 3060, 3061, and 3062, respectively, reflect the Judicial Council's recognition of the California Supreme Court's ruling in *Koire* that sex-based discrimination is "per se injurious." The Directions For Use for CACI 3060, 3061 and 3062 recognize that plaintiffs asking for only the statutory damages provided by Civil Code section 52 for violations of section 51, 51.5, or 51.6, such as Plaintiffs pray for here, do not have to prove they were harmed or that the defendants' conduct was a substantial factor in causing the harm, because harm is presumed. Nevertheless, Plaintiffs and other similarly situated male, female, and nonbinary consumers were indeed harmed and damaged in this case by being subject to harmful generalizations and stereotypes and by being denied equal accommodations, advantages, facilities, privileges, or services based solely on their sex.

19. The putative class in this case is defined below as including male, female, and nonbinary fans and attendees of Defendants' Ladies' Night game, all of whom were intentionally treated unequally by Defendants because of their gender.

## **PARTIES**

20. At all times relevant hereto, Plaintiff Christine Johnson has been a female and a California resident.

21. At all times relevant hereto, Plaintiff Harry Crouch has been a male and a California resident.

22. On information and belief, at all times relevant hereto, Defendant Fresno Sports and Events LLC LLC ("Fresno Sports and Events LLC") has been a business establishment, a California limited liability company doing business in California, as well as being the owner and/or operator of, the Fresno Grizzlies, a minor league baseball team associated and affiliated with Defendant Minor League Baseball, Inc. The Grizzlies are a Class A farm team for the Colorado Rockies, a Major League Baseball team. Fresno Sports and Events LLC created, approved, advertised, marketed,

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

promoted, hosted, employed, managed, participated in, and/or at least aided the above Ladies' Night game held on May 25, 2023 at the Fresno Grizzlies home Chuckchansi Park that is described herein.

23. On information and belief, at all times relevant hereto, Defendant Fresno Sports and Events Partners, LLC ("Fresno Sports and Events Partners") has been a business establishment, a California limited liability company doing business in California, as well as being the owner and/or operator of, the Grizzlies. Fresno Sports and Events Partners labeled, created, approved, advertised, marketed, promoted, hosted, employed, managed, participated in, and/or at least aided the above Ladies' Night game held on May 25, 2023 at the Grizzlies home Chuckchansi Park that is described herein.

24. On information and belief, at all times relevant hereto, Defendant DBH Fresno, LLC ("DBH Fresno") has been a business establishment, a Delaware limited liability company doing business in California, as well as being the owner and/or operator of, the Fresno Grizzlies. DBH Fresno labeled, created, approved, advertised, marketed, promoted, hosted, employed, managed, participated in, and/or at least aided the above Ladies' Night game held on May 25, 2023 at the Grizzlies home Chuckchansi Park that is described herein.

25. On information and belief, at all times relevant hereto, Defendant Diamond Baseball Holdings, LLC ("Diamond Baseball Holdings") has been a business establishment, a Delaware limited liability company doing business in California, as well as being the owner and/or operator of, the Fresno Grizzlies. Diamond Baseball Holdings labeled, created, approved, advertised, marketed, promoted, hosted, employed, managed, participated in, and/or at least aided the above Ladies' Night game held on May 25, 2023 at the Grizzlies home Chuckchansi Park that is described herein.

26. On information and belief, at all times relevant hereto, Defendant Diamond Baseball Parent, LLC ("Diamond Baseball Parent") has been a business establishment, a Delaware limited liability company doing business in California, as well as being the owner and/or operator of, the Fresno Grizzlies. Diamond Baseball Parent labeled,

10

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

created, approved, advertised, marketed, promoted, hosted, employed, managed, participated in, and/or at least aided the above Ladies' Night game held on May 25, 2023 at the Grizzlies home Chuckchansi Park that is described herein.

27. On information and belief, at all times relevant hereto, Defendant Minor League Baseball, Inc. ("MiLB"), has been a business establishment, a Delaware corporation headquartered in St. Petersburg, Florida and doing business throughout California through its many Minor League Baseball affiliated teams, such as the Grizzlies. MiLB created, approved, advertised, marketed, promoted, hosted, employed, managed, participated in, incited, and/or at least aided the above Ladies' Night game held on May 25, 2023 at the Grizzlies home Chuckchansi Park that is described herein. At a minimum, MiLB is a proper defendant pursuant to Civil Code section 52 for commercially advertising and promoting a stated policy of unlawful gender price discrimination, i.e., aiding or inciting the discrimination as set forth herein. (*Hale v. Morgan*, 22 Cal.3d 388, 396 (1978) ["It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof"].) Thus, any person who "denies, aids or incites a denial, or makes any discrimination or distinction contrary to [the Act]" is a proper defendant.

28. On information and belief, at all times relevant hereto, Defendant Jonathan Bravo is an individual employed by the Grizzlies. Bravo created, approved, advertised, marketed, promoted, hosted, employed, managed, participated in, implemented, incited, and/or at least aided the above Ladies' Night game held on May 25, 2023 at the Grizzlies home Chuckchansi Park that is described herein. At a minimum, Bravo is a proper defendant pursuant to Civil Code section 52 for aiding or inciting the discrimination as set forth herein. (*Hale v. Morgan*, 22 Cal.3d 388, 396 (1978) ["It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof"].) In *North Coast Women's Care Medical Group, Inc. v. San Diego County Superior Court* (2008) 44 Cal. 4th 1145, 1154, the California Supreme Court held, "The Unruh Civil Rights Act subjects to liability '[w]hoever denies, aids or

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

incites a denial, or makes any discrimination or distinction contrary to [the Act].' (Civ. Code, § 52, subd. (a).) Thus, liability under the Act for denying a person the 'full and equal accommodations, advantages, facilities, privileges, or services' of a business establishment (Civ. Code, § 51, subd. (b)) **extends beyond the business establishment itself to the business establishment's employees responsible for the discriminatory conduct**." (Emphasis added.)

29. On information and belief, at all times relevant hereto, Defendant United Board Operations LLC dba VirtCh has been a business establishment, a Georgia limited liability company headquartered in Wisconsin and doing business in California by providing its services to sports teams such as the Grizzlies. On information and belief, on several occasions VirtCh sent its employees Scot Johnson and Lindsey Webb to multiple-day, in-person meetings at Chukchansi Park in Fresno for the purpose of planning the Grizzlies' promotions, including the Ladies' Day game at the center of this case. In fact, VirtCh has historically posted photos and videos of such meetings on its LinkedIn and Instagram pages:

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES



On information and belief, and in concert with the Grizzlies, VirtCh created, approved,

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

advertised, marketed, promoted, hosted, employed, managed, participated in, incited, and/or at least aided the above Ladies' Night game held on May 25, 2023 at the Grizzlies home Chuckchansi Park that is described herein. At a minimum, VirtCh is a proper defendant pursuant to Civil Code section 52 for aiding or inciting the discrimination as set forth herein.

30. The true names and capacities of Does 1 through 20 are unknown to Plaintiffs. When their true names and capacities are learned, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and on that basis allege, each fictitiously named defendant is responsible in some way for and at least aided the occurrences herein alleged, and those defendants proximately caused Plaintiffs' damages. Each reference in this complaint to "Defendants," "Defendant," or a specifically named defendant refers to all defendants sued under fictitious names.

31. Unless otherwise alleged, whenever reference is made in this complaint to any act of "defendant," "defendants," or to a specifically named defendant, such allegation shall mean that each defendant acted individually and jointly with the other defendant named in the complaint.

32. Unless otherwise alleged, whenever reference is made in this complaint to any act or omission of any corporate or business defendant, such allegation shall mean that such corporation or other business defendant committed or omitted to act as in this complaint through its officers, members, directors, stockholders, employees, agents, and/or representatives while they were acting within the actual or apparent scope of their authority.

33. At all relevant times alleged herein, each defendant has been each the agent, alter-ego, representative, partner, joint venturer, employee, or assistant of the other defendants and has acted within the course and scope of said agency, alter-ego, representation, partnership, or joint venture with the knowledge, notification, authorization, and consent of each of the other defendants.

14

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

**JURISDICTION AND VENUE**

34. This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332(d). This is a putative class action where: (i) the proposed nationwide class consists of more than 100 members; (ii) at least one class member has a different citizenship from Defendants; and (iii) the claims of the proposed class exceed $5,000,000 in the aggregate. The Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

35. The Court has personal jurisdiction over all Defendants due to their continuous and systemic contacts with the State of California. Defendants have sufficient business in California and have sufficient minimum contacts in California to render the exercise of personal jurisdiction over them by California courts consistent with traditional notions of fair play and substantial justice.

36. Specifically, personal jurisdiction against Defendant MiLB is proper under *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770 (1984) because MiLB engages in substantial business activity in the State of California, as opposed to activities which could be characterized as random, isolated, or fortuitous. MiLB has continuously and deliberately cultivated the California market as alleged herein. MiLB took an active role in the advertisement and promotion of the Ladies' Night game at the center of this case, and MiLB actually sells physical products – ballgame tickets and apparel – in California through its interactive website. See https://www.milb.com/fresno/tickets/single-game-tickets and https://grizzlies.milbstore.com/ (last visited March 20, 2024.) Personal jurisdiction is also proper under *Herbal Brands, Inc. v. Photoplaza, Inc. et al*, No. 21-17001, 2023 WL 4341454, at *1 (9th Cir. July 5, 2023) (If a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, then the defendant has purposefully directed its conduct at the forum such that the exercise of personal jurisdiction may be appropriate.) Personal jurisdiction against MiLB is also proper under *Calder v. Jones*, 465 U.S. 783 (1984) because MiLB aimed its commercial activities at California knowing that the

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

effects of its activities would be felt there by advertising, marketing, and promoting the Ladies' Night game to Californias, as well as selling physical products in the California market and hosting the Grizzlies advertisements and promotions.

37. Furthermore, personal jurisdiction against Defendant Unified Board Operations LLC dba VirtCh is proper under *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770 (1984) because VirtCh engages in substantial business activity in the State of California, as opposed to activities which could be characterized as random, isolated, or fortuitous. VirtCh has continuously and deliberately cultivated the California market as alleged herein and has actively and continuously provided in-person marketing and promotional services to the Grizzlies, and therefore countless thousands of ballpark attendees, including the Ladies' Night game. In a YouTube video posted August 17, 2022, Derek Franks, President of the Grizzlies, discusses his longstanding relationship with Defendant Unified Board Operations LLC's companies, Visua and VirtCh, and how their services have been utilized by the Grizzlies for the benefit of Grizzlies fans and the Fresno community in general. See https://www.youtube.com/watch?v=ouqufq6KkLQ&t=110s (last visited March 20, 2024.) Personal jurisdiction is also proper under *Calder v. Jones*, 465 U.S. 783 (1984) because VirtCh aimed its commercial activities at California knowing that the effects of its activities would be felt there by bringing more customers to the ballpark.

38. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

39. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, events, or omissions giving rise to Plaintiffs' claims occurred in this district and all Defendants have conducted business in this district.

## **CLASS ALLEGATIONS**

40. Plaintiffs bring this class action on behalf of themselves and all other persons similarly situated, defined as follows:

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

All persons who attended the May 25, 2023, Ladies' Night game at Chuckchansi Park in Fresno and were treated unequally by being charged different prices for their tickets for this game based on the person's sex or gender (the "Attendee Class").

All persons who had the bona fide intent to attend the May 25, 2023, Ladies' Night game at Chuckchansi Park in Fresno but were deterred from attending because they received an advertisement reflecting a stated policy of unlawful gender price discrimination (the "Advertisement Class").

41. These classes exclude counsel representing the class, governmental entities, Defendants, any entity in which Defendants have a controlling interest, any Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

42. Plaintiffs reserve the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

43. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

44. The potential members of the class are so numerous that joinder of all members of the class is impractical. Although the precise number of putative class members has not been determined at this time, Plaintiffs are informed and believe that the proposed classes include thousands of members.

45. There are common questions of law and fact that predominate over any questions affecting only individual putative class members.

17

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

46. Plaintiffs' claims are typical of the claims of the members of the putative class because Plaintiffs were treated unequally and discriminated against based on their sex at the Ladies' Day game by being charged different prices for their tickets for this game based on the person's sex or gender during the applicable class period, or by being deterred from attending the game due to having received an advertisement reflecting a stated policy of unlawful gender price discrimination. Plaintiffs and each class member sustained similar injuries arising out of Defendants' conduct in violation of law. The injuries of each member of the respective classes were caused directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants' misconduct is common to all members of the putative class and represents a common thread of misconduct resulting in injury to all members of the class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of putative class members and are based on the same legal theory: gender price discrimination.

47. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of putative class members is not practicable and questions of law and fact common to the class members predominate over any questions affecting only individual putative class members. Each member of the putative class has been damaged and is entitled to recovery by reason of Defendants' illegal acts.

48. Class action treatment will allow those similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

49. Plaintiffs are unaware of any difficulties that are likely to be construed in the management of this action that would preclude its maintenance as a class action.

50. The disposition of all claims of the members of the class in a class action, rather than individual actions, benefits the parties and the Court. The interests of the class

18

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

members in controlling prosecution of separate claims against the Defendants is small when compared to the efficiency of a class action.

51. Plaintiffs will fairly and adequately represent and protect the interests of the classes. Plaintiffs' Counsel and for the putative class members are experienced and competent in litigating class actions for violations of California Civil Code sections 51, 51.5, 51.6, and 52.

52. Plus, despite the many California statutes, California Supreme Court opinions, and State of California administrative agency publications and opinions that prohibit businesses operating in California from requiring consumers to pay different prices for the same thing based on the consumers' sex or gender, many consumers still likely do not know that pricing promotions such as Defendants' Ladies' Night game violated the above-referenced anti-discrimination statutes and are subject to the remedies provided by Civil Code section 52. A class action will right the wrongs inflicted on those many consumers who were treated unequally by Defendants because of their sex and who likely do not even know they have valid discrimination claims against Defendants.

53. Defendants, by having created, approved, advertised, marketed, promoted, hosted, employed, managed, participated in, incited, and/or to least have aided a sex-based pricing promotion with different ticket prices for attendees of the Ladies' Night game, have acted or have refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, and making appropriate class certification.

## FIRST CAUSE OF ACTION

### Violation of The Unruh Civil Rights Act, Civil Code Section 51

54. Plaintiffs incorporate in this cause of action the allegations contained in each and every preceding paragraph of this Complaint as if they were set out at length herein.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

55. Defendants, by charging Plaintiffs and other attendees of the Ladies' Night game different prices for tickets to the game based on the attendees' sex or gender, or by sending intended attendees an advertisement reflecting a stated policy of unlawful gender price discrimination, intentionally denied equal accommodations, advantages, facilities, privileges, or services to Plaintiffs, which is prohibited by the Unruh Civil Rights Act, codified by Civil Code section 51.

56. A substantial motivating reason for Defendants' conduct was the Plaintiffs' sex.

57. Defendants' conduct harmed and damaged Plaintiffs and members of the Classes.

58. Defendants' conduct was a substantial factor in causing harm to Plaintiffs and members of the classes.

59. Defendants' unequal treatment of the Plaintiffs and members of the Classes subjects Defendants to injunctive relief.

60. Defendants are, at a minimum, liable for aiding the above-referenced discrimination by at least approving and advertising the Ladies Night game and its sex- and gender-based ticket prices pursuant to Civil Code section 52.

## SECOND CAUSE OF ACTION
### Violation of Civil Code Section 51.5

61. Plaintiffs incorporate in this cause of action the allegations contained in each and every preceding paragraph of this Complaint as if they were set out at length herein.

62. Defendants, by charging Plaintiffs and other attendees of the Ladies Night game different prices for tickets to the game based on the attendees' sex or gender, or by sending intended attendees an advertisement reflecting a stated policy of unlawful gender price discrimination, intentionally discriminated against Plaintiffs based on their sex, which is prohibited by Civil Code section 51.5.

63. A substantial motivating reason for Defendants' conduct was the sex of the Plaintiffs and the members of the Classes.

20

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

64. Defendants' conduct harmed and damaged Plaintiffs and the Classes.

65. Defendants' conduct was a substantial factor in causing harm to Plaintiffs and the Classes.

66. Defendants' unequal treatment of the Plaintiffs and the Classes subjects Defendants to injunctive relief.

67. Defendants are, at a minimum, liable for aiding the above-referenced discrimination by at least approving and advertising the Ladies Night game and its sex- and gender-based ticket prices pursuant to Civil Code section 52.

## THIRD CAUSE OF ACTION

### Violation of Civil Code Section 51.6

68. Plaintiffs incorporate in this cause of action the allegations contained in each and every preceding paragraph of this Complaint as if they were set out at length herein.

69. Defendants, by charging Plaintiffs and other attendees of the Ladies Night game different prices for tickets to the game based on the attendees' sex or gender, or by sending intended attendees an advertisement reflecting a stated policy of unlawful gender price discrimination intentionally engaged in gender price discrimination as codified and prohibited by Civil Code section 51.6.

70. Defendants' conduct harmed and damaged Plaintiffs and the Classes.

71. Defendants' conduct was a substantial factor in causing harm to Plaintiffs and the Classes.

72. Defendants' unequal treatment of the Plaintiffs and the Classes subjects Defendants to injunctive relief.

73. Defendants are, at a minimum, liable for aiding the above-referenced discrimination by at least approving and advertising the Ladies Night game and its sex- and gender-based ticket prices pursuant to Civil Code section 52.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

## FOURTH CAUSE OF ACTION

### Negligence

74. Plaintiffs incorporate in this cause of action the allegations contained in each and every preceding paragraph of this Complaint as if they were set out at length herein.

75. Defendants had a duty of care to avoid injury to Plaintiffs and the Classes. Specifically, Defendants had a duty of care to avoid treating Plaintiffs and the members of the Classes unequally based on their sex.

76. Defendants selected, hired, retained, and contracted with persons and/or entities that harmed Plaintiffs and the Classes as described above.

77. Defendants had the authority and duty to supervise, prohibit, control, and/or regulate these persons and/or entities that harmed Plaintiffs and the Classes.

78. Defendants knew or reasonably should have known that persons or entities that harmed Plaintiffs and the Class would harm Plaintiff and the Classes.

79. Defendants breached their duty of care by (1) denying Plaintiffs and the Classes their right to equal treatment, and (2) failing to use reasonable care in selecting, hiring, supervising, retaining, or contracting with persons or entities who harmed Plaintiff and the Classes.

80. As a direct and proximate result of Defendants' negligence and negligent hiring, supervision, and retention, Plaintiffs and the Classes suffered damages in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes pray judgment against each and every Defendant as follows:

1. Certification of the case as a class action on behalf of the proposed Classes;

2. Designation of Plaintiffs as representatives of the proposed Classes;

3. Designation of Plaintiffs' counsel of record as Class Counsel;

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

4. A declaratory judgment that the practices complained of herein are unlawful and violate California Civil Code §§ 51, 51.5, 51.6, and 52;

5. Public injunctive relief in the form of a preliminary and permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

6. For statutory damages mandated by and pursuant to California Civil Code section 52 for each and every offense committed by each Defendant against Plaintiffs and the Class for violating California Civil Code §§ 51, 51.5, 51.6, and 52;

7. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law, including as provided by California Civil Code § 52; and

8. For such other and further legal and equitable relief as this Court may deem proper, appropriate, justified, or equitable.

Dated: March 26, 2024                          Respectfully submitted,

                                              /s/ *Alfred G. Rava*
                                              Alfred G. Rava

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES